## REDD v. SIMMONS.

(Division A. April 13, 1936.)

[167 So. 65. No. 32195.]

Lotterhos & Travis, of Jackson, for appellant.

W. E. Morse and John Burkett, both of Jackson, for appellee.

**Cook, J.,** delivered the opinion of the court.

This is an appeal from a decree of the chancery court of Hinds county dismissing a bill of complaint filed by Silas Redd, appellant, against John E. Simmons, chief of police of the city of Jackson, appellee, seeking to enjoin the appellee from seizing and interfering with the operation of certain machines called "pin marble machines" which the appellee alleged to be gambling devices.

The bill of complaint alleged that the appellant was the owner of a large number of "pin marble machines" which were customarily leased to persons in the city of Jackson who operated them on a commission basis. A description of the machines, as set forth in the bill of complaint, is as follows:

"The machine itself consists of a painted box about 38 inches long by about 19 inches wide by about 10 inches deep set upon four legs resting upon the floor. One of the two sides of the greatest area uppermost. The

upper, or top, side of said box is of glass. The entire box is so set upon its supporting legs as that one of the short ends of the box (player end) is lower than the other short end. It is equipped that in order to play machine the player must stand at the lower short end of the box.

"Projecting through the left hand side of the lower, or player, end of the box is a coin slot lever into the slot of which a player may insert a nickel and obtain release of ten balls or marbles for consecutive play by thrusting the coin slot lever, with the nickel, forward into the machine. Projecting through the right hand side of the player end of the box is another lever which, at each thrust forward by the player, will cause one of the released balls or marbles to be emitted through an opening into the marble way or alley hereinafter described, where it is ready for play. Projecting through the right hand side of the player end of the box, also, but above the marble emitting lever, is a spring controlled marble propelling plunger, by means of which each of the ten released balls, as it is emitted into the marble alley may be consecutively propelled up, and out of, the inclined marble alley on to the inclined playing board proper, below described.

"Beneath the glass top of the box and separated therefrom, is visible a plane surface playing board, divided into the marble alley and playing board proper, as hereinafter described. A raised wooden strip, parallel with the right hand side of the box, runs along the right hand portion of the playing board from the lower end of the playing board to a point about four-fifths of the way to the upper end of the playing board, thereby separating the playing board into a narrow marble runway at the right of the playing board and into the playing board proper. This strip forms the left side of the marble alley. The strip of metal which forms the right side of the marble alley curves to the left near the upper end of the playing board and continues in such curve across the upper end of the board to the left side of the playing

board where it curves into a projection into the board. A ball which has sufficient momentum to hug the metal strip and reach this projection, or spring, is thereby thrown upon the surface of the playing board and if it has sufficient additional momentum it may be thrown into the hole denominated a Forward Pass, and thereby score 1000 points, or it may return to the board among the pins and other holes. If the ball, when it reaches said spring or projection, have not sufficient momentum to be kicked into the hole denominated Forward Pass, it trickles down the board among the pins and holes. The playing board proper, outside the marble runway, is pierced with 30 holes, systematically spaced, each of which is numbered and each of which has a diameter slightly greater than the diameter of any of the aforesaid ten balls. Grouped about these holes, and scattered, is a system of metal baffle pins or springs rising about one-half inch above the surface of the playing board. These baffle pins or springs number about 100. Whenever a ball of the ten ball series sinks into one of such holes the score of such ball is the number of the hole into which it sinks. A ball which sinks into a hole projects slightly above the surface of the board and effectively closes said hole against entry therein of any of the remaining balls of the ten ball series. Said 30 holes are respectively numbered 400, 600, 400, 600, 100, 1000, 1000, 100, 400, 2000, 2000, 6000, 400, 3000, 3000, 600, 1000, 300, 1000, 200, 500, 500, 200, 400, 100, 2500, 100 and 400, and in addition there is a hole denominated 'Forward Pass' into which, if the ball goes, the same counts 1000.00.

"Across the lower end of the playing board is a depression or pit where each ball played comes to rest if it does not finding lodgment in one of the numbered holes. Balls which come to rest in the pit are lost and receive a score of zero.

"The player stands at the lower short end (Player end) of the machine and inserts a five cent piece of the United States into the slot lever at his left and pushes the slot

lever in, whereupon ten balls or marbles are so released within the machine as that they may be subsequently put into play one at a time. Upon such release of the ten balls, the player pushes in the marble emitting lever, whereby one of the series of ten balls is pushed up through an opening into the marble runway or alley, where it is in contact with the inner end of the spring controlled plunger rod and is ready for play. The plunger rod is equipped with a spring so that when the outer end of the plunger rod is pulled back by the player the spring is compressed. The outer end of the plunger rod is equipped with a knob for the convenience of the player, and when the knob is pulled back and the spring compressed, release of the knob will cause the spring to seek its former uncompressed state, whereby the inner end of the rod is driven against the ball in the marble runway and the ball is thereby propelled up the inclined marble runway onto the playing board proper. After the player has caused the ball to be emitted into the marble runway, he pulls back and releases the knob on the outer end of the plunger rod at his right, whereby the ball in the marble runway is propelled up the inclined runway onto the playing board proper, where it ultimately either falls into a numbered hole, or into the 'lost' pit. Each of the nine remaining balls of the ten ball series is consecutively emitted into the runway and consecutively played in the same manner. The foregoing method of consecutive play of balls may be varied by the player as follows:—By manipulation of the ball emitting lever and the plunger rod he may get any number of balls, from one to ten, into the marble runway, and with one operation of the plunger rod cause all balls in the runway to be propelled together up the runway and onto the player board proper.

"Eight of the balls used in said machine are white, while one is green and one red. The red ball scores double the number on any hole on the playing board into which it sinks, while the green ball achieves a score of

triple the number of any hole upon the board in which it comes to rest.

"The player can exercise no control over the movement of the ball on the board after the ball is struck by the plunger, other than such control as results from the force applied and the manner of its application by the player.

"It is the practice of the complainant in possession and control of the machines above described to give a player a prize, to-wit; a package of cigarettes, of the value of fifteen cents, plus the tax, for achievement of an aggregate score in excess of 12,000 in each ten ball series round of play, and decline to give such prize, or any other prize, for achievement of a lesser aggregate score in any such round of play."

The bill of complaint further charged that as thus constructed and used the machines were not gambling devices, but were games of skill played wholly for amusement; that the appellant had paid the privilege taxes required by law for the use and operation thereof; and that they were not being used in violation of the laws of the state, or the ordinances of the city of Jackson.

At the trial of the cause one of these machines was exhibited and operated in the presence of the trial judge, and the operation thereof was shown to be in the manner described in the bill of complaint. The owner of these machines testified that he and the lessee each received fifty per cent. of the net profits of the machine, after the cost of the prizes or awards, usually a package of cigarettes, had been deducted. The proof further showed that by placing a nickel in a slot, ten balls are released for play, and that a score in excess of twelve thousand, made by playing these ten balls singly or together wins a prize, while a score of less than twelve thousand wins nothing. The appellant testified that the operation of these machines was a game of skill in which chance played a very small part, and he also offered a witness who claimed to be an expert in the operation

thereof, who testified to the same thing. This expert operated the machine in the presence of the court, and on the first trial he made a score of 11,900. He explained that his failure to make a higher score on the ground that the floor on which the machine was placed was not entirely level. On the second trial, under identical conditions, he made a score of only four thousand nine hundred.

The court below inspected the machine, witnessed its operation by the supposed expert, and heard the testimony as to the character thereof, and we are unable to say that it erred in holding that it is a gambling device within the meaning of our statute. In fact, we think the description of the machine, showing a playing surface with thirty holes, each surrounded by "hazards" or "baffle pins," and each having a scoring value varying from one hundred to three thousand, on which balls varying in color and scoring value are played, clearly shows that it is a game of chance. To the novice, including school children, who the evidence tended to show were among its patrons, it was a pure game of chance, while as to the supposed expert, a difference of seven thousand on two successive trials, under identical conditions, strongly tends to show the predominant element of chance, and particularly so when this expert testified that a mere change in the level of the machine would materially affect the results obtained by an experienced player.

The decree of the court below will, therefore, be affirmed.

Affirmed.